IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DAVID FOSTER #462271, ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 3:22-cv-00017 |
| v. ) | |
| ) | JUDGE RICHARDSON |
| CORRECTIONAL OFFICER GRAVES, et ) | |
| al., ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM OPINION

Plaintiff David Foster, an inmate at Trousdale Turner Correctional Center (TTCC) in Hartsville, Tennessee, filed a pro se civil rights complaint under 42 U.S.C. § 1983[1] (Doc. No. 1) and an application to proceed as a pauper. (Doc. No. 2.) This action is before the Court for initial review under the Prison Litigation Reform Act.

**I.      Application to Proceed as a Pauper**

The Court may authorize a prisoner to file a civil suit without prepaying the filing fee. 28 U.S.C. § 1915(a). Plaintiff's application to proceed as a pauper is accompanied by a certified trust account statement reflecting that he cannot pay the full filing fee in advance. (Doc. No. 2.) The Court notes that the application (and the Complaint) is dated about two months before the Court received it. (*See* Doc. No. 1 at 5; Doc. No. 2 at 2.) The Court has no basis to hold this unexplained gap in time against Plaintiff, so the application (Doc. No. 2) will be granted, and the $350.00 filing fee will be assessed as directed in the accompanying Order. 28 U.S.C. § 1915(b). However, if the

---

[1] The handwriting in the Complaint is difficult, but not impossible, to read. Plaintiff is cautioned to write clearly and legibly in all filings he submits to the Court. This word of caution will be repeated in the accompanying Order.

Court later determines that Plaintiff's "allegation of poverty is untrue," the Court will be required to dismiss the case. *Id.* § 1915(e)(2)(A).

## II. Initial Review

The Court must dismiss the Complaint if it is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); 42 U.S.C. § 1997e(c). The Court also must liberally construe pro se pleadings and hold them to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### A. Factual Allegations

This action concerns events alleged to have occurred at TTCC on August 6, 2021. (Doc. No. 1 at 3.) The Court accepts as true all of the allegations in the following five paragraphs, which are set forth in Plaintiff's complaint.

Correctional Officer Mitchell had a seizure triggered by an electrical shock. (*Id.*) Several prisoners, including Plaintiff, came to Mitchell's aid by turning Mitchell's body to side so Mitchell would not swallow her tongue. (*Id.*) The prisoners tried to get the attention of TTCC staff by kicking on the door, but no one responded. (*Id.*) The prisoners then pushed the red button on Mitchell's radio, triggering a "man down" medical emergency. (*Id.*)

"Minutes later," three TTCC officials entered Plaintiff's housing pod: Dana Thomas, Chief of Unit Management; Donelle Harris, Assistant Chief of Unit Management; and Correctional Officer Graves. (*Id.*) Thomas and Harris directed all prisoners in the pod to lockdown and threatened the prisoners who assisted Officer Mitchell, including Plaintiff, with the "use of unnecessary force." (*Id.*; *see also id.* at 5 (alleging that Thomas and Harris "directed that retaliation be issued against Plaintiff, not knowing Plaintiff along with other prisoners saved [] Mitchell's

2

life").) Plaintiff was housed in cell 204, and Thomas "gave a direct order to all staff that was present to strip, search, and destroy" cells 204 and 205 because Thomas believed these cells "cause[d ] the electric shock" that caused Officer Mitchell's seizure. (*Id.* at 3–4.)

Officer Graves and the "Green Team" directed Plaintiff to step out of the cell, get on his knees, cross his legs, and place his hands on the wall. (*Id.* at 4.) Plaintiff complied and remained in that position while several officers searched his cell and destroyed his personal property. (*Id.*) Other prisoners began protesting Plaintiff's treatment by yelling through their doors. (*Id.*) Officer Graves became "aggressive, argumentative, and threatening toward all prisoners" in the pod. (*Id.*)

"[F]illed with rage," Officer Graves attacked Plaintiff, who was still in the compliant position outside the cell. (*Id.*) Graves hit Plaintiff in the face with a closed fist, wrapped his hands around Plaintiff's neck, and choked Plaintiff while repeatedly slamming Plaintiff's head against the concrete floor. (*Id.*) While doing so, Graves yelled, "Fuck you motherfucker, fuck you!" (*Id.*) Plaintiff yelled, "I can't breathe man, I can't breathe," before becoming unresponsive. (*Id.*)

Plaintiff suffered "head injuries, neck injuries, severe throat pain, back injuries, and injuries to both knees." (*Id.* at 5.) Plaintiff "was denied medical" by Officials Thomas and Harris. (*Id.* at 4.)

Based on these alleged facts, Plaintiff sues Chief Thomas, Assistant Chief Harris, and Officer Graves. (*Id.* at 1.) He requests monetary damages and a "preliminary injunction/TRO" requiring TTCC staff to "refrain from retaliation during the course of this suit" and receive training to prevent "assault against prisoners." (*Id.* at 5.)

**B.     Legal Standard**

To determine if the Complaint "fails to state a claim on which relief may be granted" under the applicable statutes, the Court applies the same standard as under Rule 12(b)(6) of the Federal

Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The Court therefore accepts, as it has done above, "all well-pleaded allegations in the complaint as true, [and] 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). An assumption of truth does not extend to allegations that consist of legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

### C. Discussion

"There are two elements to a [Section] 1983 claim. First, a plaintiff must allege that a defendant acted under color of state law. Second, a plaintiff must allege that the defendant's conduct deprived the plaintiff of rights secured under federal law." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012) (citation omitted).

#### 1. Officer Graves

Plaintiff alleges that Officer Graves threatened all prisoners in Plaintiff's housing pod before brutally attacking Plaintiff while Plaintiff was complying with TTCC staff's direction to remain in a submissive, non-threatening position. The Eighth Amendment establishes the right for prisoners to be free from excessive force by prison officials. *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013) (citing *Whitley v. Albers*, 475 U.S. 312, 318–22 (1986)). This claim has objective and subjective components. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (citing *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013)). For the objective component, a plaintiff must allege that an official inflicted pain that was "sufficiently serious" based on "contemporary standards of decency." *Id.* at 585 (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)). The subjective component requires the Court to consider whether the force applied by an official

4

was "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 580 (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

Here, accepting Plaintiff's allegations as true, Plaintiff states an excessive force claim against Officer Graves. The pain inflicted by Graves's use of force objectively is sufficiently serious, and Plaintiff's allegations reflect that Graves's subjective motivation was to cause harm rather than maintain discipline. The Court notes, however, that Plaintiff cannot maintain a separate Eighth Amendment claim against Graves based on the threats Graves made prior to the attack. *See Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (citing *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987)) ("[H]arassment and verbal abuse . . . do not constitute the type of infliction of pain that the Eighth Amendment prohibits.").

### 2. Chief Thomas and Assistant Chief Harris

Plaintiff alleges that Dana Thomas and Donelle Harris, the respective Chief and Assistant Chief of Unit Management, threatened "the use of unnecessary force" and directed retaliation against the prisoners who assisted Officer Mitchell following Mitchell's seizure, including Plaintiff. Shortly thereafter, Officer Graves brutally attacked Plaintiff.

"In order to succeed on a supervisory liability claim, Plaintiff must show that 'a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.'" *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 865 (6th Cir. 2020) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). "While a supervisor must have engaged in 'some active unconstitutional behavior,' that behavior need not be 'active in the sense that the supervisor must have physically put [] hands on the injured party or even physically been present at the time of the constitutional violation." *Id.* (quoting *Peatross v. City of Memphis*, 818 F.3d 233, 242–43 (6th Cir. 2016)) (internal citation and quotation marks omitted).

5

Here, again accepting Plaintiff's allegations true, Plaintiff has pleaded sufficient factual matter to state a supervisory liability claim against Chief Thomas and Assistant Chief Harris for authorizing Officer Graves's asserted use of excessive force. As with Officer Graves, the alleged threats made by Thomas and Harris do not support an Eighth Amendment claim on their own. *See Unknown Dellatifa*, 357 F.3d at 546. But the specific nature of the threat—that TTCC staff would use unnecessary against prisoners—along with Thomas's order to "strip, search, and destroy" Plaintiff's cell, is sufficient to "plausibly allege that [Thomas and Harris] 'did more than play a passive role in the alleged violations or show mere tacit approval of the goings on.'" *Peatross*, 818 F.3d at 243 (quoting *Gregory v. City of Louisville*, 444 F,3d 725, 751 (6th Cir. 2006)).

Plaintiff also alleges that Chief Thomas and Assistant Chief Harris denied him medical treatment following the attack by Officer Graves. The Eighth Amendment "is violated when prison doctors or officials are deliberately indifferent to [a] prisoner's serious medical needs." *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018) (quoting *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). "A constitutional claim for deliberate indifference contains both an objective and a subjective component. The objective component requires a plaintiff to show the existence of a 'sufficiently serious' medical need." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) (quoting *Farmer*, 511 U.S. at 834). "The subjective component, in contrast, requires a plaintiff to 'allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk.'" *Id.* (quoting *Comstock*, 273 F.3d at 703).

Here, the injuries Plaintiff allegedly suffered from the attack satisfy the objective component, but Plaintiff does not satisfy the subjective component. The extent of Plaintiff's allegations on this subject are that Plaintiff "was denied medical" by Thomas and Harris. Without

6

more, this undeveloped allegation does not permit the Court to reasonably infer that Thomas and Harris were "aware of facts from which [they] could infer a substantial risk of serious harm" to Plaintiff. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 891 (6th Cir. 2018) (quoting *Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 542 (6th Cir. 2008)) (explaining that "the subjective component of a deliberate indifference claim must be addressed for each officer individually"). Plaintiff therefore fails to state a claim for deliberate indifference to serious medical needs against Thomas and Harris at this time.

### 3. Official Capacity Claims

Plaintiff brings this action against Defendants in both their individual and their official capacities. (Doc. No. 1 at 2.) The individual-capacity claims have been addressed above. Official-capacity claims are equivalent to claims against the entity that a defendant represents. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)) ("[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent."). All three Defendants are TTCC employees (Doc. No. 1 at 2), and the Court takes judicial notice that CoreCivic is the private entity contracted to manage TTCC.[2] Plaintiff's official-capacity claims are therefore equivalent to claims against CoreCivic.

To state a Section 1983 claim against a private entity like CoreCivic, Plaintiff must allege that the entity had a policy or custom that directly caused him to suffer a constitutional violation. *Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012) (citing *Miller v. Sanilac Cnty.*, 606 F.3d 240,

---

[2] *See* Trousdale Turner Correctional Center, TENNESSEE DEPARTMENT OF CORRECTION, https://www.tn.gov/correction/sp/state-prison-list/trousdale-turner-correctional-center (last visited Jan. 18, 2022); Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

7

255 (6th Cir. 2010)). Plaintiff makes no such allegation of "policy or custom" here. Plaintiff therefore fails to state a claim against CoreCivic, and his official-capacity claims will be dismissed.

### III. Request for a TRO

In the Complaint, Plaintiff requests a "preliminary injunction/TRO." Under Federal Rule of Civil Procedure 65(b), the Court may grant a temporary restraining order (TRO) "only if specific facts . . . clearly show that immediate and irreparable injury, loss or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). In deciding whether to grant a TRO, the Court considers: (1) whether the party seeking the TRO has a strong likelihood of success on the merits; (2) whether the moving party will suffer irreparable injury if the TRO is not entered; (3) the potential harm the TRO would cause the opposing party; and (4) whether the public interest would be served by issuance of the TRO. *Vargas v. Janow*, No. 3:21-cv-00574, 2021 WL 5084579, at *13 (M.D. Tenn. Nov. 1, 2021) (citing *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689–90 (6th Cir. 2014); *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006)).

Before the Court reaches the merits, however, a TRO movant must comply with specific procedural requirements. First, this Court's local rules require any request for a TRO to "be made by written motion separate from the complaint commencing the case." M.D. Tenn. L.R. 65.01(a). Second, because the movant bears the burden of justifying preliminary injunctive relief on the merits, *Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588, 600 (6th Cir. 2014), a TRO motion must be accompanied by a memorandum of law. M.D. Tenn. L.R. 65.01(b). Third, a TRO motion must be supported, at a minimum, by "an affidavit or a verified complaint." Fed. R. Civ. P. 65(b)(1)(A); M.D. Tenn. L.R. 65.01(b). Fourth, a TRO movant must give notice to opposing parties or certify in writing "any efforts made to give notice and why it should not be required." Fed. R. Civ. P.

8

Case 3:22-cv-00017  Document 5  Filed 01/18/22  Page 8 of 9 PageID #: 28

65(b)(1)(B). The Court mandates "strict compliance" by pro se parties with this notice provision to avoid the potential unfairness of ruling against parties without notice. M.D. Tenn. L.R. 65.01(c).

Plaintiff satisfies none of these requirements. There is no TRO motion separate from the Complaint. Plaintiff's request is not supported by a memorandum of law, nor is it accompanied by a signed affidavit or verified complaint. There is no indication that Plaintiff served or attempted service of Defendants, and Plaintiff does not attempt to explain any efforts he made to give notice to Defendants or why notice should not be required. In short, Plaintiff has not complied with the mandatory procedures for consideration of a request for injunctive relief on the merits.

Accordingly, Plaintiff's request for a TRO will be denied without prejudice. As explained in the accompanying Order, however, this ruling does not prevent Plaintiff from later filing a properly-supported, procedurally-complaint Rule 65 motion for injunctive relief.

## IV. Conclusion

For these reasons, the Court concludes that Plaintiff states an excessive force claim against Officer Graves in his individual capacity and related supervisory liability claims against Chief Thomas and Assistant Chief Harris in their individual capacities. These claims will be referred to the Magistrate Judge for further development consistent with the accompanying Order, and all other claims will be dismissed. Plaintiff's request for a TRO will also be denied without prejudice.

An appropriate Order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE